UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

ANTOINETTA CASTALDO,

                         Plaintiff,

    v.                                           **DECISION AND ORDER**
                                                          11-CV-322S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

      1.      Plaintiff, Antoinetta Castaldo, challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that she has been disabled due to severe anxiety disorder since May 24, 2007.  Plaintiff contends that her impairment renders her unable to work. She therefore asserts that she is entitled to disability insurance benefits ("DIB") under the Act.

      2.      Plaintiff filed an application under Title II for DIB on August 31, 2007, alleging disability beginning May 24, 2007.  The Commissioner of Social Security ("Commissioner") denied Plaintiff's initial application.  Plaintiff then requested a hearing.  An administrative hearing was held on August 18, 2009 and November 18, 2009 before ALJ Eric L. Glazer, at which Plaintiff appeared with counsel and testified.  The ALJ considered the case *de novo*, and on December 23, 2009, issued a decision denying Plaintiff's applications for benefits.  Plaintiff filed a request for review with the Appeals Council, which, on March 7, 2011, denied Plaintiff's request for review.  Plaintiff filed the current civil action on April 15,

2011, challenging Defendant's final decision.[1]

3.  On December 1, 2011 Defendant filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing on that motion concluded on April 23, 2012, at which time this Court took the motion under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted.

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the

---

[1] The ALJ's December 23, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since May 24, 2007 (R. at 13);[2] (2) Plaintiff has a number of "severe" impairments within the meaning of the regulations (id.);[3] (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. at 17); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work with some limitations (R. at 18);[4] and (5) considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform (R. at 26). Ultimately, the ALJ

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ identified the following severe impairments: asthma, osteopenia, major depressive disorder, recurrent, moderate, and anxiety disorder, not otherwise specified. (R. at 13.)

[4] Plaintiff was to avoid concentrated exposure to pulmonary irritants including smoke, dust, odors, fumes, temperature extremes, humidity, and poor ventilation. She could only handle low-stress positions requiring occasional decision-making and changes in the work setting. She could not perform production-rate work, but would instead require goal-oriented work. Lastly, she could have only occasional interaction with the public and incidental interaction with co-workers.

concluded that Plaintiff was not under a disability as defined by the Act from May 24, 2007, through December 23, 2009, the date of the ALJ's decision. (R. at 27.)

10.     Plaintiff advances two challenges to the ALJ's decision. First, Plaintiff argues that the ALJ did not properly evaluate the medical evidence from her three treating physicians, Dr. Joshua Usen, Dr. Stephen Skiffington, and Dr. M.S. Rahman.  Second, Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony.

11.     As to Plaintiff's first challenge, this Court must separately consider whether the ALJ properly applied the "treating physician's rule" to each of her three doctors.[5] Under that rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Generally, "the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999).  Moreover, SSR 96-2p provides:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

1996 WL 374188, at *5 (S.S.A. July 2, 1996).  Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

weight" under certain circumstances. Under 20 C.F.R. § 404.1527(c)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of treating physician; and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9; see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

12. As pertains to this case, Dr. Usen's treated records covers the time between, and including, March 5, 2007 to July 10, 2009. (R. at 428-446.) On the last date from which records are available, Dr. Usen wrote that "Pt's MAIN DISABLING Dx is mental [sic]." (R. at 432.) Plaintiff argues that it was error for the ALJ not to consider this opinion in his discussion. (Pl.'s Mem. 2-3, Docket No. 16.)

13. Of course, the ALJ did take note of this very comment. (R. at 24.) He then considered, and rejected that opinion on the basis that it was inconsistent with Plaintiff's medical record and Dr. Usen's own clinical notes. As to the latter, this Court notes that, aside from the one isolated comment, nothing else in Dr. Usen's treatment shows Plaintiff disabled for mental reasons. A progress note dated October 22, 2007, observes that her anxiety is "stable" and that she was "doing better." (R. at 439.) A functional capacity report from November 20, 2007, finds that her non-exertional functions were variable, but that she could understand, carry out, and remember instructions, and that her anxiety was "well controlled." (R. at 440.) Another note from July 10, 2009 states that, as to her anxiety, Plaintiff was doing well on medication. (R. at 433.) Even the document containing Dr. Ursen's disability finding, entitled "MEDICAL OPINION RE: ABILITY TO DO WORK-

RELATED ACTIVITIES," states that Plaintiff's ability to concentrate would not be impaired by any pain, and that she would only be absent from work on average about once a month as a result of her impairments. (R. at 432.) There is thus substantial support for the ALJ's determination not to give binding weight to Dr. Usen's comment that Plaintiff was disabled for mental reasons. See 20 C.F.R. § 404.1527(c)(3)-(4). Plaintiff provides nothing to support a different conclusion. Her first challenge, as to Dr. Usen, is rejected.

14.   Turning next to Dr. Skiffington, Plaintiff's medical record extends from July 24, 2006 to October 12, 2007. (R. at 286-340.) As part of that record, on May 3, 2007, Dr. Skiffington stated that Plaintiff "is unable to get and maintain gainful employment due to her depression and anxiety." (R. at 294.) He had expressed the same opinion previously on April 2, 2007, and on various other dates. (See R. at 297, 302.) The ALJ did not credit these statements, finding them based on Plaintiff's subjective complaints. Plaintiff takes issue with this, asserting that these statements were a proper basis for the doctor's opinion that she was disabled.

15.   As an initial matter, this Court notes that the ALJ was not required to credit Dr. Skiffington's disability determination. See Green-Younger, 335 F.3d at 106 ("'A treating physician's statement that the claimant is disabled cannot itself be determinative.'" (quoting Snell, 177 F.3d at 133)).[6] Stripped of such statements, Dr. Skiffington's notes largely consist of Plaintiff's own observations. A session summary from May 2, 2007 shows that it was Plaintiff who repeatedly described her anxiety level as a seven or eight on a ten-point scale. (See R. at 296, 303.) She also told Dr. Skiffington that she had problems focusing and concentrating and had poor judgment. (R. at 296.) She added that she could not work because of depression, low self-esteem, anxiety, problems paying attention, making

---

[6] The same is true of Dr. Usen's opinion that Plaintiff had a mental disability. (R. at 432.)

mistakes, inefficiency, carelessness, forgetfulness, tardiness, absenteeism, and not getting along with co-workers. (R. at 296-297.) She expressed similar views in most of Dr. Skiffington's other treatment notes. (See, e.g., R. at 301, 304, 306.) Yet when Dr. Skiffington himself completed a mental impairment questionnaire, he marked none of her mental abilities and aptitudes as "Poor or None." (R. at 313-314.)[7] This contrast and the fact that the clinical notes are dominated by Plaintiff's own subjective statements suffice to make remand unnecessary. See 20 C.F.R. § 404.1528 (claimant's "statements alone are not enough to establish that there is a physical or mental impairment"); see also Rosario v. Apfel, No. 97 CV 5759, 1999 WL 294727, at *6 (E.D.N.Y. Mar. 19, 1999) ("Of course, plaintiff's subjective statements cannot be the sole basis for a finding of disability."). The ALJ was entitled to make a credibility determination as to Plaintiff's subjective symptoms. In so doing, and in finding Plaintiff not credible, the ALJ was free to give her psychologist's opinion less weight on the ground that it was based primarily on her personal assessment of her symptoms and limitations.[8]

---

[7] Several categories were marked as "Fair," while others were labeled "Good" or "Unlimited or Very Good." (R. at 313-314.)

[8] See Modest v. Astrue, No. 09 CV 44(SJ)(JMA), 2012 WL 947652, at *3 (E.D.N.Y. Mar. 20, 2012) (declining to give controlling weight to physician's assessment that claimant could not perform full range of sedentary work where diagnosis based on subjective complaints and ALJ found plaintiff not credible); Jaskiewicz v. Comm'r of Soc. Sec., No. 3:08-CV-379, 2010 WL 5138477, at *4-*5 (N.D.N.Y. Dec. 10, 2010) (finding sufficient basis for ALJ's decision not to give physician's opinion controlling weight in part because opinion based on "self-serving subjective statements"); Paulino v. Astrue, No. 08 Civ. 02813(CM)(AJP), 2010 WL 3001752, at *25 (S.D.N.Y. July 30, 2010) (finding that ALJ had substantial basis to disregard physician's opinion where based entirely on subjective complaints and contradicted by other medical opinions); see c.f., Polis v. Astrue, No. 09-CV-379 (FB), 2010 WL 2772505, at *10 (E.D.N.Y. July 13, 2010) (remanding case because ALJ's decision to set aside physicians' opinions for being based on claimant's subjective complaints was riddled with factual errors). Despite the number of district court decisions supporting decisions like the one rendered in this case, this Court is aware that at least one other district court has found an ALJ's decision in error where the ALJ rejected physicians' opinions because he viewed them as based primarily on a plaintiff's subjective complaints. See Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at *9 (W.D.N.Y. Oct. 22, 2009). In that court's view, it was error for the ALJ to speculate on how plaintiff's physicians reached their conclusions. Id.

16. In any case, Dr. Skiffington last examined Plaintiff on June 6, 2007. (R. at 286.) Plaintiff alleges disability beginning May 24, 2007, meaning that the vast majority of Dr. Skiffington's treatment, and diagnosis, pertains to a period before the alleged disability's onset date. As will be further discussed later, this is because this claim for benefits is Plaintiff's second application. Regardless, the fact that Dr. Skiffington was not, for the most part, treating Plaintiff after May 24, 2007 substantially limits what weight his opinion merits. See Dwyer v. Astrue, 800 F. Supp. 2d 542, 549 (S.D.N.Y. 2011) (affidavit of psychiatrist who conducted consultative psychiatric evaluation prior to alleged onset date of disability entitled to little, if any, weight). Plaintiff's first challenge, as to Dr. Skiffington, is also rejected.

17. The result is the same for Plaintiff's third physician, Dr. Rahman. His medical records run from September 14, 2006 to November 21, 2007, and then again from January 16, 2008 to June 25, 2009. As with Dr. Skiffington, the ALJ gave Dr. Rahman's treatment record less weight for being based on Plaintiff's subjective complaints. The record was also accorded less weight because it shows Plaintiff's anxiety to have been the result of situational stressors. The ALJ also considered Plaintiff's own ability to prepare a detailed family history and rationale for why she was disabled as evidence of her ability to engage in goal-directed activities while exhibiting intact attention, concentration, memory, insight, and judgment. (R. at 25.) Finally, the ALJ also considered the fact that plaintiff had previously declined to pursue work outside of certain occupations with commensurate compensation. (Id.) Plaintiff now argues that the ALJ improperly substituted his opinion for that of Dr. Rahman.

18. Here, this Court finds no error as the ALJ's description is in accord with Dr. Rahman's treatment notes. Thus, on January 16, 2008, Dr. Rahman observed that Plaintiff

"feels less depressed." (R. at 426.) He also found that "thought processes are goal directed" and that her "attention, concentration, and memory are fair" while her insight and judgment were also "fairly intact." (Id.) Substantially similar assessments follow over the next 16 months. (R. at 416-425.) Plaintiff is consistently described as "less depressed and less anxious" with her "attention, concentration, memory, insight, and judgment . . . fairly intact." (See, e.g., R. at 421.) In comparing this record against Dr. Rahman's later diagnosis that Plaintiff could not complete a normal workday, the ALJ committed no error in giving Dr. Rahman's opinion less than controlling weight. See 20 C.F.R. § 404.1527(c)(4).[9]

Having considered each of Plaintiff's physicians, her first challenge is rejected in whole.

19. Plaintiff's second challenge concerns the ALJ's alleged mischaracterization of her testimony. To fully understand this argument, it is necessary to review the complete history of Plaintiff's application for benefits. Although Plaintiff now alleges an onset disability date of May 24, 2007, in a previous application Plaintiff had alleged disability beginning April 21, 2004. (R. at 10.) Plaintiff filed the first application on August 9, 2005. (Id.) In his decision denying Plaintiff's application for benefits, ALJ Timothy M. McGuan

---

[9]There is a factual dispute concerning one of Dr. Rahman's notes, dated August 26, 2009. Asked whether Plaintiff could complete a normal workday in any type of work, Dr. Rahman checked "Yes" and added "[a]s per pt's report to me. I did evaluate Pt for 2 hr in any work settings (sic)." (R. at 448.) Plaintiff alleges that the ALJ incorrectly interpreted this response.

In his decision, the ALJ wrote that "Dr. Rahman's conclusions rise out of a two-hour office conference, scheduled during the time frame of the hearings before the undersigned; they appear to have been framed solely to buttress a record materially deficient in establishing that claimant could not adjust to perform any work." (R. at 25.) The ALJ also appears to have misread the note to state that Dr. Rahman "did not evaluate [Plaintiff] for two hours in any work settings" (R. at 24), when it clearly states that the doctor *did* evaluate her for any work setting (R. at 488). But this error was merely an oversight; the ALJ later correctly noted that Dr. Rahman "conclu[ded] that the claimant could not work in any setting." (R. at 25) (underlining in original). Further, even accepting that the ALJ was incredulous of Dr. Rahman's opinion because of when the note was submitted, this does not lessen the fact that Dr. Rahman's records do not reflect Plaintiff's total disability.

noted that Plaintiff testified that "she started teaching Sunday school, which went well, but she quit because she was afraid that it would 'hurt her disability case by continuing to teach.'" (R. at 91.) She added that "she did not want anyone to think that she was able to go out and teach in a public school" and, when asked whether she could do some other type of work, stated that "she could not live on other jobs pay [sic]," apparently because she had a lifestyle requiring a certain level of income. (Id.) ALJ McGuan finally observed that "[w]hen asked about doing unskilled work, she said that if she could not function as a teacher, she could not do anything else." (Id.)[10] ALJ McGuan ultimately concluded that Plaintiff had not been under a disability from April 21, 2004 through May 23, 2007, the date of his decision. (R. at 96-97.) Plaintiff then filed the present application, alleging a disability onset of May 24, 2007.

20. ALJ Glazer relied on ALJ MCGuan's decision to find that Plaintiff's prior testimony undercut Dr. Rahman's opinion that she could not perform any work. (R. at 25.) ALJ Glazer further observed that Plaintiff "declines to pursue any work outside of the band of occupations and compensation parameters she envisions will provide the measure of economic security she chooses" and that "[t]he record presented at this hearing has not changed in any material aspect from the one before Judge McGuan." (Id.) In so doing, he did not credit Plaintiff's hearing testimony.

> ALJ: Did you not say to others at certain points in time that you would not settle for any other job but teaching, that that was the only job that you wished to do?
>
> Plaintiff: It's the only job I was trained to do. Truly.
>
> ALJ: As far as that being the only job you could adjust to do, are you saying in your testimony that there is no job that you would choose to

---

[10] She also stated that "if she receives Social Security disability, she will then be eligible for a teacher's retirement." (R. at 90.)

11

> do but that teaching job?

Plaintiff: Your Honor, I think I explained myself, I thought I explained myself in that document that I've been through so much as far as in the work environment that I don't think that I can function at anything else.

(R. at 57-89.)

21. Plaintiff now challenges the ALJ's decision to reject her latest testimony that she was not fit for any work. In support her attorney makes the following representation:

> After that hearing [before ALJ McGuan] I thoroughly explained the requirements to her that stated she had to be unable to do any type of work, not just teaching. Over the pendency of her second claim she admitted that she could not do any type of work. I suspected that had the case [sic] since her original onset date, but she had been unable to admit that even to herself. It has been my observation that most clients in a professional position, with extensive education, have difficulties perceiving themselves as a housekeeper or a mail clerk.

(Pl.'s Mem. at 7.)

Ignoring for the moment the wholly speculative nature of counsel's remark, whatever its merits it was certainly not necessary for the ALJ to accept it. See Saxon v. Astrue, 781 F. Supp. 2d 92, 99 (N.D.N.Y. 2011) (citing Dunn v. Astrue, No. 08-CV-0704-C, 2010 WL 376390, at *3 (W.D.N.Y. Jan. 27, 2010)) ("Where a claimant seeks to reopen a claim where a final decision has been rendered, the Commissioner may refuse such a request under the doctrine of *res judicata*."). Here, the ALJ "reviewed the entire record" and found "no good cause to reopen the determination on this prior application and that the foregoing decision [by ALJ McGuan] is final." (R. at 10.)[11] Moreover, Plaintiff's counsel does not

---

[11] No argument is made that the ALJ constructively reopened the prior proceeding by reviewing its record and thus this Court need not consider whether it would have jurisdiction to consider ALJ McGuan's decision. See Saxon, 781 F. Supp. 2d at 99 (discussing circumstances in which federal courts may review decision not to reopen prior disability application); Grant v. Shalala, No. 93-CV-0124E(F), 1995 WL 322589, at *7 (W.D.N.Y. Mar. 13, 1995) ("[O]nly where the Secretary does not accord preclusive effect to the earlier decision, and instead considers all the evidence and renders a decision on the merits on all the applications is the prior application deemed to have been reopened.").

argue that Plaintiff did not make the statements in question, only that Plaintiff was not herself aware of the true extent of her disability. There is a reason credibility questions are left to the ALJ, and not this Court. See Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S., 728 F.2d 588, 591 (2d Cir. 1984). Plaintiff has identified no authority on the basis of which the ALJ was not entitled to consider the fact that her testimony at an earlier hearing contradicted statements she later made before ALJ Glazer. Counsel's speculation, while perhaps an interesting anecdote, in no way compels a different result.

22. Plaintiff concludes her argument by alleging that the ALJ was obviously "somewhat biased" based on the fact that he asked leading questions and had made up his mind before even asking whether she could do work outside of teaching. This argument is as speculative as counsel's earlier theory. Although grounds which might give rise to "serious concerns about the fundamental fairness of the disability review process" include "a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party" and "a refusal to weigh or consider evidence with impartiality," Sutherland v. Barnhart, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004), the mere fact that the ALJ asked leading questions is insufficient, see Brown v. Astrue, No. CV-08-3653, 2010 WL 2606477, at *9 (E.D.N.Y. June 22, 2010) (rejecting claim of bias where plaintiff argued ALJ insulted her, rushed hearing, limited cross-examination of vocational expert, and asked leading questions). If anything, the fact that the ALJ asked about Plaintiff's prior testimony bolsters the conclusion that the ALJ had not made up his mind, but was giving Plaintiff the opportunity to explain herself. (R. at 57.) Indeed, at the August 18, 2009 hearing, the ALJ explicitly stated his concerns:

> I'm very sympathetic to our claimant's case. I'm not certain
> that she isn't being excessively harder on herself with respect
> to what other kinds of things she might do that would present

> less of an opportunity to be stressed and to have to be dealing with the frailties of humankind as they might exist. But I really don't know just yet what additional questions I might have of, of our claimant and/or any treatment providers, but I will think about it and go from there.

(R. at 79.)

Having reviewed the record this Court is satisfied that the ALJ exhibited no bias. Plaintiff's second challenge is thus rejected.

23. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings.

* * *

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: July 8, 2012
      Buffalo, New York

                                 /s/William M. Skretny
                                 WILLIAM M. SKRETNY
                                     Chief Judge
                               United States District Court